**NOT FOR PUBLICATION**

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 26-10097
Non-Argument Calendar

_____

TYLER LEE CANARIS,

*Plaintiff-Appellant,*

*versus*

MICHAEL MCMASTER,
in his Individual Capacity as a former
Deputy of the Paulding County Sheriff's Office,
GARY GULLEDGE,
in his Individual and Official Capacity as
Sheriff of Paulding County,

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 4:23-cv-00215-WMR

_____

Before WILLIAM PRYOR, Chief Judge, and NEWSOM and BRANCH,
Circuit Judges.

PER CURIAM:

Tyler Canaris appeals the summary judgment in favor of Deputy Michael McMaster and Sheriff Gary Gulledge and against his complaint alleging claims of excessive force in violation of the Fourth Amendment, and false imprisonment, assault and battery, and intentional infliction of emotional distress under Georgia law. *See* 42 U.S.C. § 1983. We affirm.

We recount the facts in the light most favorable to Canaris except when the dashboard camera video "is clear and obviously contradicts the plaintiff's alleged facts." *Johnson v. City of Atlanta*, 107 F.4th 1292, 1301 (11th Cir. 2024); *see also Scott v. Harris*, 550 U.S. 372, 379-81 (2007) (holding that, where the relevant events are captured on video, courts shall review the facts "in the light depicted by the video").

Canaris was walking to a local gas station to be picked up by a coworker on their way to work at a landscape business when Deputy McMaster approached him in his patrol car, activated his blue lights, and got out of his vehicle. Deputy McMaster was responding to reports of a man wearing dark clothing and a backpack who was attempting to break into cars in the area that morning. Canaris stopped walking, and Deputy McMaster told Canaris, whose hands were in his pockets, "let me see your hands."

The video shows Canaris removing what appears to be a headphone from his ear and Deputy McMaster telling him repeatedly to take his hands out of his pockets. When Canaris did not comply, Deputy McMaster told him that he was being detained.

Deputy McMaster then told Canaris to remove his backpack multiple times. Canaris asked him, "what am I doing?", and Deputy McMaster told Canaris that if he did not remove his backpack, he would be taken to the ground.

Deputy McMaster escorted Canaris to the front of the patrol car. The video shows Canaris against the front of the vehicle, facing the windshield, and Deputy McMaster behind him struggling to get Canaris's hands behind his back. Canaris held his cell phone in front of him with his left hand. Deputy McMaster put Canaris's right arm behind his back and told Canaris to put the phone down. Canaris did not comply. Deputy McMaster took Canaris's phone and placed it on the hood of the vehicle and removed Canaris's backpack.

Deputy McMaster told Canaris that he was being detained because he matched the description of a person breaking into cars. Canaris said, "I'm not breaking into anyone's cars." Canaris's left arm remained in front of him, and he pulled his right arm away and turned to his right so that his hands, both of which were then free, were out of Deputy McMaster's view. Deputy McMaster then locked arms around Canaris's midsection and forcibly took him to the ground by picking him up and falling backwards. Both Canaris and Deputy McMaster hit the ground. The video ends with Canaris being handcuffed on the ground by Deputy McMaster and another deputy who arrived on the scene shortly after Canaris was taken down, brought to his feet by the officers, and escorted out of frame.

Canaris filed a complaint alleging excessive force in violation of the Fourth Amendment, and false imprisonment, assault and battery, and intentional infliction of emotional distress under state law against Deputy McMaster. *See* 42 U.S.C. § 1983. He alleged that he sustained injuries that required medical and surgical treatment after being forcibly taken to the ground, including a left clavicle fracture, thumb fracture, skull fracture, rupture of his left ear drum, and traumatic brain injury. He also alleged supervisory liability for the use of excessive force against Sheriff Gulledge. Deputy McMaster and Sheriff Gulledge moved for summary judgment.

The district court granted summary judgment for the officials. It ruled that qualified immunity barred Canaris's claim of excessive force. It also ruled that official immunity barred Canaris's state law claims. It ruled that the Eleventh Amendment barred any claims against Sheriff Gulledge in his official capacity and that qualified immunity barred the claim of supervisory liability.

We review a summary judgment *de novo*. *Williams v. Aguirre*, 965 F.3d 1147, 1156 (11th Cir. 2020). We view the evidence and draw all inferences in the light most favorable to the non-moving party and resolve all reasonable doubts about the facts in favor of the non-movant. *Id.*

Canaris argues that the district court erroneously made credibility determinations, weighed evidence, and drew inferences in the light most favorable to Deputy McMaster. He urges that "the district court appears to have ignored or disregarded" his testimony and argues that the video from the dashboard camera of Deputy

McMaster's patrol car contained ambiguities subject to interpretation, so the district court should have construed the ambiguities in his favor. But Canaris does not describe what ambiguities the district court allegedly misconstrued.

Qualified immunity shields government officials for discretionary actions that do not violate a clearly established federal right. *Brooks v. Miller*, 78 F.4th 1267, 1279 (11th Cir. 2023). If the officer establishes that he acted within his discretionary authority, the plaintiff must establish that the officer's conduct violated a federal right and that the violation was clearly established when it occurred. *Settle v. Collier*, 160 F.4th 1282, 1288 (11th Cir. 2025). "We may review whether there was a violation or whether the violation was clearly established in either order." *Id.* The parties do not dispute that Deputy McMaster acted within his discretionary authority during the incident.

The Fourth Amendment provides a "right of the people to be secure in their persons . . . against unreasonable . . . seizures." U.S. Const. amend. IV. It includes the right to be free from the use of excessive force during an arrest. *Graham v. Connor*, 490 U.S. 386, 394-95 (1989). Excessive force is based on an objectively reasonable standard: whether the officer's actions are objectively reasonable considering the facts and circumstances confronting the officer, no matter the officer's underlying intent or motivation. *Id.*

Whether an officer used excessive force depends on the specific facts and circumstances of each case, including but not limited to "the severity of the crime at issue, whether the suspect poses an

immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight," as well as "the need for the application of force," "the relationship between the need and amount of force used," and "the extent of the injury inflicted." *Mobley v. Palm Beach Cnty. Sheriff Dep't*, 783 F.3d 1347, 1353 (11th Cir. 2015) (quotation marks omitted). "Use of excessive force is an area of law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (citation and internal quotation marks omitted). To deny qualified immunity, the "existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012).

The district court did not err in granting Deputy McMaster qualified immunity for the claim of excessive force. Canaris's resistance and sudden movement of his right arm away while Deputy McMaster tried to handcuff him made it reasonable to believe that he might be reaching for a concealed weapon. And it was reasonable for Deputy McMaster to attempt to disarm Canaris. *See Johnson*, 107 F.4th at 1302-03. Deputy McMaster did not use excessive force by forcibly taking Canaris to the ground to restrain and handcuff him. *See Graham*, 490 U.S. at 394-95.

Canaris argues that the district court should not have exercised supplemental jurisdiction over his state law claims after dis-

missing his federal claims. But supplemental jurisdiction is discretionary, and the district court did not abuse its discretion. 28 U.S.C. § 1367(c)(3).

The district court also did not err in granting Deputy McMaster official immunity. Under Georgia law, officers are not entitled to official immunity for discretionary acts performed with actual malice or intent to injure. *Roberts v. Mulkey*, 808 S.E.2d 32, 35 (Ga. Ct. App. 2017); Ga. Const. art. I, § 2, para. IX(d). Deputy McMaster performed a discretionary act during the incident, but Canaris offers no evidence that he acted with actual malice or intent to injure. *See Roberts*, 808 S.E.2d at 35.

Although Canaris concedes that the Eleventh Amendment bars any claim against Sheriff Gulledge in his official capacity, he argues that the district court erred in dismissing his federal claim against the Sheriff in his individual capacity. Supervisory officials cannot be held liable for the unconstitutional acts of their subordinates based on respondeat superior or vicarious liability. *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014). To hold a supervisor liable, a plaintiff must prove that the supervisor "either participated directly in the unconstitutional conduct or that a causal connection exists between the supervisor's actions and the alleged constitutional violation." *Id.* But Canaris failed to establish that Deputy McMaster violated his federal right to be free from excessive force. Without an underlying federal violation, Sheriff Gulledge cannot be liable as a supervisor.

We **AFFIRM** the summary judgment in favor of the officials.